(August 23, 1993)

■ In the Matter of DANIEL V. HOGAN et al., Appellants, v STERLING T. GOODSPEED et al., Respondents. In the Matter of WILLIAM E. MONTGOMERY, III, Appellant, v STERLING T. GOOD-

SPEED et al., Respondents. [601 NYS2d 356] —Per Curiam. Appeal from an order of the Supreme Court (Brown, J.), entered August 16, 1993 in Warren County, which dismissed petitioners' applications, in two proceedings pursuant to Election Law § 16-102, to declare invalid the designating petition naming respondent Sterling T. Goodspeed as the Republican Party candidate for the office of Warren County District Attorney in the September 14, 1993 primary election.

Petitioners Daniel V. Hogan and Patricia R. Freebern, as objectors, and petitioner William E. Montgomery, III, an opposing candidate, brought separate proceedings to invalidate the designating petition naming respondent Sterling T. Goodspeed as the Republican Party candidate for the office of Warren County District Attorney. Supreme Court dismissed the petitions in both proceedings and petitioners appeal.

Initially, we agree with Supreme Court that Hogan and Freebern's failure to timely file specifications with the Warren County Board of Elections required dismissal of the proceeding brought by them. It is undisputed that the specifications were mailed on July 22, 1993, the last day for filing, but were not postmarked until the following day. As relevant to proceedings outside the City of New York, Election Law § 1-106 (1) allows no additional time for mailing except that "papers sent by mail in an envelope postmarked prior to midnight of the last day of filing shall be deemed timely filed and accepted for filing when received". This limited exception has no application in a case such as this where the envelope was not postmarked prior to midnight of the last day of filing (see, Election Law §§ 1-106, 6-154 [2]; Matter of Persichetti v Bollatto, 109 AD2d 811). However, because the filing of objections and specifications was not a prerequisite to Montgomery's proceeding, his petition is not similarly flawed (Election Law § 16-102 [1]). Further, we reject the contention that Montgomery's failure to specifically allege a defect in the binding of Goodspeed's designating petition (see, Election Law § 6-134 [2]) precludes consideration of that issue. In our view, Montgomery's petition (the only one to be hereinafter considered) alleged facts sufficient to provide notice of the allegations and objections being asserted (see generally, CPLR 3013; Matter of Delmont v Kelly, 172 AD2d 1067, 1068, lv denied 77 NY2d 809; cf., Matter of Reich v Power, 30 AD2d 925, affd sub nom. Reich v Lisa, 22 NY2d 887).

We now turn to the merits and particularly the allegation that Goodspeed's designating petition was not bound as re-

quired by Election Law § 6-134 (2). The uncontroverted evidence adduced at a hearing before Supreme Court is that shortly after 4:30 P.M. on July 13, 1993, Goodspeed carried 104 consecutively numbered sheets containing 1,568 signatures and a completed cover sheet to the private office of Robert Allen, the Republican Election Commissioner, within the suite of offices of the Warren County Board of Elections. Goodspeed testified that it was his intention to have the papers stapled together and then filed; however, Allen advised Goodspeed that the petition contained too many sheets to permit stapling and that he would take them downstairs and bind them into a volume himself, as he had done "for most of the candidates". According to the testimony of Allen and Democratic Election Commissioner Lois Montfort, Allen time stamped the petition at 5:00 P.M. on July 13, 1993, Allen and Montfort each initialed the petition and Montfort placed a rubber band around it, to keep parts of it from "get[ting] lost". The actual binding of this and approximately 15 other petitions took place in the County print shop at approximately 9:00 A.M. on July 14, 1993. Thereafter, Allen returned the petition to the office of the Board of Elections and "it was logged in the book as required by law" and reviewed by Allen and Montfort. On July 15, 1993, Goodspeed presented an additional 35 sheets containing 445 signatures for filing. Rather than annex an amended cover sheet to the petition filed on July 13, 1993, Goodspeed accepted Allen's advice to amend the cover sheet to the second petition so as to satisfy the additional requirements of Election Law § 6-134 (2) concerning cover sheets on multivolume petitions.

Prior to enactment of the Election Reform Act of 1992, effective May 8, 1992 (L 1992, ch 79, § 33), the courts had consistently held that the requirements of Election Law § 6-134 (2), including the mandate that designating petitions be bound together in one or more volumes, are ones of "content rather than form * * * such that strict compliance is required" (Matter of Bouldin v Scaringe, 133 AD2d 287, 288, lv denied 70 NY2d 604; see, Matter of Braxton v Mahoney, 63 NY2d 691; Matter of Jones v Scaringe, 143 AD2d 294, lv denied 72 NY2d 805). Clearly, however, that line of cases was legislatively overruled by the new Election Law § 6-134 (15), which provides in pertinent part that "[t]he provisions of subdivisions two and four of this section shall be liberally construed, not inconsistent with substantial compliance thereto and the prevention of fraud". No longer are the courts required (or permitted) to abort candidacies and disenfran-

chise voters as the result of an innocent violation of some technical requirement having no logical bearing upon the underlying purpose of preventing fraud *(see, Matter of Erazo v Lipper,* 112 AD2d 880, *affd sub nom. Erazo v Board of Elections,* 65 NY2d 943; *Matter of Farrell v Morgan,* 112 AD2d 882; *Matter of Comstock v Wolf,* 112 AD2d 1061, *lv denied* 65 NY2d 607).

Here, there is no question that, in releasing the designating petition to Allen, Goodspeed had no intent to file an unbound petition. To the contrary, he understandably submitted to the authority and relied upon the representations of this County election official, possessing considerable experience and apparent expertise, that he would attend to the appropriate details. Further, Allen made no effort to hide his possession of the unbound petition. Rather, he immediately time stamped it and showed it to his Democratic counterpart, who assisted in temporarily securing the papers. Then, the petition was left for the night in the office of the Board of Elections and bound with a binding clip as soon as the printing office opened the next morning. In this we see no unacceptable risk of fraud. As noted, the individual sheets had been consecutively numbered and the sheaf of papers temporarily secured. Significantly, Montgomery has made no claim of actual or threatened fraud. Under all the circumstances, we conclude that there has been substantial compliance with the binding requirements of Election Law § 6-134 (2). Similarly, it is our view that Goodspeed substantially complied with the requirements of Election Law § 6-134 (2) concerning cover sheets on multivolume petitions.

In view of the fact that the designating petition filed on July 13, 1993 contained 1,568 signatures, far in excess of the required 947 signatures, we need not address any further contentions surrounding the petition filed on July 15, 1993. We note that Montgomery has not pursued his specific objections to signatures on the designating petition in his brief, thereby abandoning them *(see, First Natl. Bank v Mountain Food Enters.,* 159 AD2d 900, 901).

Yesawich Jr., Mercure and Casey, JJ., concur.

Crew III, J. (concurring in part and dissenting in part). Although we concur with the majority's determination that the specifications filed by petitioners Daniel V. Hogan and Patricia R. Freebern were untimely and that the cover sheets attached to respondent Sterling T. Goodspeed's designating petition were in substantial compliance with the requirements of Election Law § 6-134 (2), we reach a different conclusion

regarding the binding of Goodspeed's petition and, therefore, respectfully dissent. Election Law § 6-134 (2) provides, in relevant part, that "[s]heets of a designating petition shall be bound together in one or more volumes" and, although perhaps not explicitly stated, it is apparent from both the statute and a consideration of its underlying objectives, i.e., the prevention of fraud and tampering, that this requirement must be met at the time the petition is filed. While we acknowledge that Goodspeed's designating petition need only be in substantial compliance with this statutory mandate (see, Election Law § 6-134 [2], [15]), we are of the view that the record before this Court fails to demonstrate that there was *any* compliance with the binding requirement.

The uncontroverted testimony at the hearing held before Supreme Court, and the affidavits filed by both Goodspeed and Robert Allen, the secretary and Republican Commissioner of respondent Warren County Board of Elections, plainly established that the first volume of Goodspeed's petition was not bound at the time it was filed with the Board at 5:00 P.M. on July 13, 1993 (see, Election Law § 1-106 [1]; *Matter of Rutherford v Jones,* 128 AD2d 978, 979, *lv denied* 69 NY2d 606); it was not until the following morning that Allen bound the petition for Goodspeed in the printing shop located in the County office building. Thus, even though there has been no showing of fraud, we are unable to conclude that Goodspeed did in fact substantially comply with the binding requirement set forth in the statute (see, Election Law § 6-134 [2], [15]). Inasmuch as the second volume of the designating petition does not contain the minimum number of signatures required, we would invalidate the designating petition.

Weiss, P. J., concurs. Ordered that the order is affirmed, without costs.